UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

TONY DON,                                         Case No. 16-CV-0103 (WMW/JJK)

        Petitioner,

v.                                                REPORT AND RECOMMENDATION

STEVE HAMMER,

        Respondent.

---

This matter is before the undersigned United States Magistrate Judge on petitioner Tony Don's petition for a writ of habeas corpus, brought pursuant to 28 U.S.C. § 2254. *See* ECF No. 1. This Court has conducted a preliminary review of Don's habeas petition under Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts. Based on that review, this Court recommends dismissal of three of the five grounds for relief raised by Don's petition, as Don is plainly not entitled to relief on those claims. By separate order, respondent will be directed to answer the remaining two claims.

I. BACKGROUND

The Minnesota Court of Appeals described the facts of Don's case as follows:

> In December 2012, appellant Tony Don was charged with aggravated robbery in the first degree. The complaint alleged that appellant and an accomplice robbed a pedestrian at knife-point in Northfield.
>
> Prior to trial, appellant moved to suppress the evidence of the victim's pretrial identification of appellant, arguing that the show-up identification of appellant was unfairly suggestive and unreliable. The district court denied the motion, concluding that the identification procedure was "unnecessarily suggestive," but that "it did not create a substantial likelihood of irreparable

misidentification" because the "identification was based upon the distinctive tattoos."

At trial, evidence and testimony was presented establishing that at about 1:00 a.m. on December 11, 2012, J.H. realized that his car was parked on the street in violation of a winter parking ban. After moving his car to avoid being ticketed, J.H. decided to go for a walk. According to J.H., it had started to snow, and he was listening to music through his headphones when he noticed two "suspicious" men "wearing bandanas around their faces." J.H. testified that he attempted to avoid the men, and when he did not see them anymore, he continued his walk. But when he rounded a corner, and turned around, he saw the two men with the heavy coats, hats, and bandanas, approaching him from around the corner, and one was "holding a knife."

The man identified as appellant demanded that J.H. "give him what [he] had," and J.H. gave him his iPod and cell phone. He also gave him a "pile of cards" that he keeps in his front pocket in lieu of a wallet, which included his driver's license and a credit and debit card. According to J.H., appellant looked at his driver's license and warned J.H. that he would remember him and come after him if he went to the police. Appellant also demanded money, so the group went to a nearby ATM where J.H. withdrew $300 and gave it to the robbers. The two men then left heading north.

After the men were out of sight, J.H. ran to a friend's house where he called 911 to report the robbery. Northfield police were then able to find footprints in the snow and followed them until they located appellant and C.W. at the rear of a private residence. When police detained appellant and C.W., they were not "appropriately attired for the weather," wearing only shirts and long pants. The men were subsequently arrested and brought to J.H. to see if he could identify them. C.W. was taken out of a squad car first and shown to J.H. J.H. was unable to identify C.W. because he was not wearing a jacket and had no distinguishing features. But J.H. was able to identify appellant because of the tattoos around his eyes.

A jury found appellant guilty of aggravated first-degree robbery. After hearing additional testimony, the jury also found that appellant was a danger to public safety as defined by

> Minn.Stat. § 609.1095, subd. 2. The district court then sentenced appellant to 168 months, a duration double the low end of the presumptive sentencing range for aggravated robbery in the first degree with appellant's criminal-history score of five. Appellant moved for a new trial, which was denied.

*State v. Don*, No. A14-0261, 2015 WL 648243, at *1-2 (Minn. Ct. App. Feb. 17, 2015).

The Minnesota Court of Appeals addressed four issues on direct appeal. First, Don argued that his due-process rights were violated when the trial court permitted the admission of pretrial-identification evidence that Don contended was solicited through an overly suggestive procedure. *Id*. at *2-3. Second, Don argued that the trial court improperly allowed the prosecution to impeach him with evidence of three prior felony convictions in violation of Minn. R. Evid. 609(a). *Id*. at *3-5. Third, Don challenged the validity of his sentence, arguing that the district court should not have found him to be a dangerous offender under Minn. Stat. § 609.1095, subd. 2, and impermissibly "triple-counted" his prior felony convictions in arriving at a sentence twice the lower end of the range established by the Minnesota Sentencing Guidelines. *Id*. at *6-7. Fourth, in a pro se supplemental brief, Don argued that the prosecutor committed misconduct in several respects during trial, including by pressuring his accomplice to testify and by altering the recording of the interrogation of the accomplice. *Id*. at *7. The Minnesota Court of Appeals rejected each of these arguments, and the Minnesota Supreme Court declined review.

Since that time, Don has sought post-conviction relief in the Minnesota state courts on at least three occasions:

> Petitioner filed his first petition for postconviction relief on July 14, 2015. Petitioner alleged the existence of newly discovered exculpatory evidence based on false trial testimony; denial of due

>process based on law enforcement's failure to preserve shoe prints in the snow and failure to fingerprint stolen cash; improper limitation of Petitioner's closing argument; and prosecutorial misconduct regarding accomplice trial testimony. The district court denied post-conviction relief without an evidentiary hearing. The district court ruled that Petitioner failed to raise new issues or allege any new evidence and only restated disputed facts in the trial record. The district court also held that Petitioner's claims were barred under *State v. Knaffla*, [243 N.W.2d 737 (Minn. 1976)], because they were either previously litigated or known but not raised at the time of a previous direct appeal or petition for post-conviction relief. Specifically, the district court held that the alleged failures of law enforcement to preserve evidence were known but not raised at trial or during direct appeal.
>
>Petitioner filed his second petition for postconviction relief on September 8, 2015. In this petition, Petitioner: (1) alleged that law enforcement failed to preserve the integrity of fingerprints on cash; (2) challenged the validity of the show-up identification conducted prior to trial; and (3) requested fingerprint testing to produce 'scientific evidence noncumulative thats [sic] relevant to actual innocence of the petitioner.' The district court denied the second petition without an evidentiary hearing. The district court found that Petitioner was not entitled to fingerprint testing because the evidence and testing method requested were available at trial but he did not request it at the time. The district court also found that Petitioner's claims were barred under *Knaffla* because he either knew or should have known about them at the time of trial, his direct appeal, or previous petition for postconviction relief.

Pet'r Ex. 1 at 3-4 [ECF No. 4]. Don did not appeal from the denial of either motion for post-conviction relief.

Don next filed a petition for a writ of habeas corpus in state court. *See* Minn. Stat. § 589.01-35. The petition was denied for a variety of procedural reasons, including that it was filed in the wrong court; that habeas corpus is not available in Minnesota courts to persons confined "by virtue of the final judgment of a competent tribunal of civil or criminal jurisdiction," Minn. Stat. § 589.01; and that Don's substantive arguments should have been

raised earlier. *See* Pet'r Ex. 1 at 4-5. Don did not appeal the denial of his state-court habeas petition.

Don now seeks habeas relief from this Court pursuant to § 2254. The habeas petition raises five grounds for relief. As explained below, three of the five claims — Grounds One, Three, and Five — plainly lack merit or can no longer be reviewed in federal habeas proceedings and should therefore be dismissed pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts. This Court will, by separate order, require respondent to answer the remaining two grounds for relief.

## II. ANALYSIS

1. Ground One: Alleged Interference with Don's Civil Rights

Don's first ground for relief is jumbled and not easy to describe succinctly. At the heart of Ground One is the somewhat perplexing assertion that "state action" is responsible for Don's current incarceration. This is self-evidently true; Don is imprisoned due to criminal proceedings prosecuted in Minnesota courts by the Rice County Attorney's Office and the State of Minnesota. But *every* collateral challenge to a judgment of conviction in state court is necessarily a challenge to state action. *See* 28 U.S.C. § 2254(a). The fact that Don is incarcerated because of "state action" is not in dispute. What *is* in dispute is whether Don's incarceration is *unlawful* because he is in custody "in violation of the Constitution or laws or treaties of the United States." *Id*.

The source of the problem may be that, in actions under 42 U.S.C. § 1983, a plaintiff must show (among other things) her civil rights were deprived as a result of state action. *See, e.g.*, *Hanuman v. Groves*, 41 Fed. App'x 7, 9 (8th Cir. 2002) (per curiam). Often in cases brought under § 1983, the question of whether the actions at issue constituted "state action" (as

opposed to the actions of purely private actors) is contested. *Id*. In contrast, almost never is "state action" a matter of dispute in habeas proceedings brought under § 2254; a conviction procured by state prosecutors and enforced through the judgment of a state court — that is, "state action" — is the central feature of every § 2254 proceeding.[1] *See* 28 U.S.C. § 2254(a).

The same is true here. The relevant question in these proceedings is not whether the State of Minnesota *acted*, but whether the State of Minnesota's actions violated the Constitution or federal law. To the extent that Don argues he is entitled to habeas relief simply because his imprisonment is the result of state action, his claim must be rejected.

Ground One does offer substantive arguments for relief alongside Don's extended argument about "state action." Mostly, though, these claims are duplicative of Don's other grounds for relief presented elsewhere in the habeas petition. For example, Don contends in Ground One that the statutory sentencing scheme invoked by the trial court is either unlawful or, at a minimum, unfair. *See* Pet. at 6. This argument mirrors the claim raised in Ground Three and is therefore duplicative. Similarly, Don's claim that the method used by police to solicit his identification from the victim was unduly suggestive is raised in Ground Four and need not be considered separately as part of Ground One. These aspects of Ground One should be denied as superfluous and therefore unnecessary.

---

[1] "State action" is sometimes a source of dispute in habeas proceedings when determining whether the one-year limitations period has expired. *See* 28 U.S.C. § 2244(d)(1)(B) (stating that the limitations period begins from the latest of four dates, one of which is "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action . . . ."). That provision is irrelevant in this case. Don does not allege that the state has ever impeded his ability to seek federal habeas relief. Further, Don's habeas petition is undoubtedly timely, as it was filed within one year of the date on which the criminal judgment became final. *See* 28 U.S.C. § 2244(d)(1)(A).

Don does offer one substantive claim in Ground One that is not presented elsewhere in the habeas petition. The Minnesota Sentencing Guidelines Commission, which is responsible for modifying the Minnesota Sentencing Guidelines, includes "three public members appointed by the governor, one of whom shall be a victim of a crime defined as a felony." Minn. Stat. § 244.09, subd. 2(9). Although his argument is not well fleshed out, Don appears to believe this amounts to an unconstitutional delegation of rulemaking authority.

Whatever the merits of this claim,[2] a federal court cannot entertain a habeas corpus petition filed by a state prisoner unless the prisoner has exhausted all available state court remedies for all of his claims. *See* 28 U.S.C. § 2254(b) and (c). To satisfy the exhaustion of state court remedies requirement, the prisoner must show that all of his federal constitutional claims have been fairly presented to, and decided on the merits by, the highest available state court. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."). This requirement is explained by the United States Supreme Court as follows:

---

[2] The merits of this claim appear dubious at best. For one thing, the claim is premised entirely on an alleged violation of separation-of-powers and non-delegation principles as established by the Minnesota constitution and state law and therefore is not cognizable on federal habeas review. *See Nance v. Norris*, 392 F.3d 284, 289 (8th Cir. 2004) ("[E]rrors of state law are not cognizable in federal habeas courts."). For another thing, even if *federal* separation-of-powers or non-delegation principles applied here, the Supreme Court has found that a similar delegation of authority to the United States Sentencing Commission was constitutional. *See Mistretta v. United States*, 488 U.S. 361 (1988).

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. To provide the State with the necessary opportunity, the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim.

*Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citations and quotations omitted). "A petitioner meets the fair presentation requirement if the state court rules on the merits of his claims, or if he presents his claims in a manner that entitles him to a ruling on the merits." *Gentry v. Lansdown*, 175 F.3d 1082, 1083 (8th Cir. 1999).

Never has Don presented to the Minnesota Supreme Court the argument that the composition of the Minnesota Sentencing Guidelines Commission is unlawful. Although Don raised this issue in his state-court habeas petition, he did not appeal the denial of that habeas petition, and thus the Minnesota appellate courts (including the Minnesota Supreme Court) were never given the opportunity to consider the claim. Moreover, there is no longer any state-court remedy available for Don's claim; when Don attempted to raise this argument in his state-court habeas petition, the court found (among other things) that Don could no longer present the argument, because he was required to do so earlier. *See* Pet'r Ex. 1 at 3-5; *Knaffla*, 243 N.W.2d at 741.

"If no state court remedy is available for the unexhausted claim — that is, if resort to the state courts would be futile — then the exhaustion requirement in § 2254(b) is satisfied, but the failure to exhaust 'provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the

petitioner can demonstrate cause and prejudice for the default' (or actual innocence, which is not an issue in this case)." *Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005) (quoting *Gray v. Netherland*, 518 U.S. 152, 162 (1996)). Nothing in Don's habeas petition or accompanying documents demonstrates or even suggests the necessary cause and prejudice. Don could have raised the issue on direct appeal — no external factor precluded him from raising the claim, *see Coleman v. Thompson*, 501 U.S. 722, 753 (1991) — but he simply failed to do so.

Ground One is in some respects irrelevant, in other respects duplicative of Don's remaining claims, and in still other respects procedurally defaulted. For all those reasons, Ground One should be denied.

2. Ground Two: Limitations on Closing Argument

In Ground Two, Don argues that the trial court improperly limited his attorney's closing argument by refusing to allow his defense counsel to imply that the prosecutor had committed misconduct at trial. This Court strongly suspects that this claim has been procedurally defaulted. Don did argue on direct appeal that the prosecutors committed misconduct during trial, *see Don*, 2015 WL 648243, at *7, but the Minnesota Court of Appeals did not address any argument that the trial court impermissibly limited Don's closing argument by not allowing his attorney to mention this alleged prosecutorial misconduct during closing arguments. The claim about improper limitations on closing arguments *was* raised in Don's first motion for post-conviction relief, *see* Pet'r Ex. 1 at 3, but the court did not reach the merits of the claim, and Don did not appeal the denial of his motion for post-conviction relief. Thus, it is doubtful that the claim has ever been fairly presented to the Minnesota Supreme Court.

That said, Don alleges that he raised this issue on direct appeal, presumably in his pro se supplemental brief filed with the Minnesota Court of Appeals. *See* Pet. at 8. That brief has not been filed in these proceedings, and so this Court cannot check the veracity of Don's claim. Out of an abundance of caution, this Court will ask respondent by separate order to respond to Ground Two of Don's habeas petition.

### 3. Ground Three: Sentencing Claims

In Ground Three, Don argues that the sentencing court impermissibly considered his criminal history three times when determining his sentence: (1) in calculating his presumptive sentencing range under the Minnesota Sentencing Guidelines; (2) in finding that he had two or more prior violent-crime convictions, as needed to sustain a finding that he was a dangerous offender under Minn. Stat. § 609.1095; and (3) in using a special interrogatory finding by the jury that Don was a danger to public safety, which was also needed to sustain the dangerous-offender finding under § 609.1095. According to Don, this triple-counting resulted in a sentence far longer than he should have received.

It is not entirely clear from the habeas petition or accompanying documents *why* Don believes this supposed triple-counting was improper. As pointed out by the Minnesota Court of Appeals, "the statute explicitly allows the district court to sentence appellant in the manner that it did." *Don*, 2015 WL 648243, at *6. The fact that the judge determined that Don had two prior convictions for violent crimes and that the jury also determined that Don is a danger to public safety based on those same prior convictions was not an oversight; it is a central feature of the Minnesota dangerous-offender statute. *See* Minn. Stat. § 609.1095, subd. 2(2). Thus, Don

cannot plausibly argue that the sentencing court violated state law (and in any event, errors of state law are not cognizable on habeas review).

Don does suggest — without much by way of analysis, *see* Pet'r Mem. at 13-14 [ECF No. 3] — that the Minnesota sentencing scheme violates his federal equal-protection and due-process rights.  Don did not argue on direct appeal that the sentencing scheme is unconstitutional, *see id.*, and so any claim now that the scheme runs afoul of the federal constitution has been procedurally defaulted.  See *Knaffla*, 243 N.W.2d at 741.

The claim is also without merit.  The Minnesota sentencing scheme at issue here in many respects mirrors provisions in the Federal Sentencing Guidelines that have repeatedly been found not to infringe upon the defendant's constitutional rights.  *See, e.g.*, *United States v. Cook*, 698 F.3d 667, 671-72 (8th Cir. 2012); *United States v. Donelson*, 450 F.3d 768, 774 (8th Cir. 2006); *United States v. Bray*, 85 F.3d 633 (8th Cir. 1996) (unpublished table disposition) (finding that defendant's "'double-counting' argument is without merit, because the district court's consideration of his prior felony convictions in computing both his base offense level under U.S.S.G. § 2K2.1(a)(2) and his criminal history category under U.S.S.G. § 4A1.1 was proper and constitutional."); *United States v. Saffeels*, 39 F.3d 833, 836-37 (8th Cir. 1994); *cf. United States v. Walters*, 775 F.3d 778, 782 (6th Cir. 2015) ("[W]hen a district court applies multiple sections of the Guidelines to determine the proper sentence for an offense, there is no constitutional violation for double jeopardy."); *United States v. Campbell*, 275 F.3d 1078 (5th Cir. 2001) (unpublished table disposition) (rejecting argument that double-counting constitutes a violation of due process).  Further, Don does not argue that the Minnesota courts impermissibly deviated from the established statutory scheme, or that he was treated any

differently than a similarly situated defendant with the same criminal history, or anything else that might constitute a colorable claim of a federal constitutional violation.[3]

Don has not fully exhausted any cognizable habeas claim relating to his sentence, and so any argument that his sentence is constitutionally invalid has been procedurally defaulted. There was no adequate cause for the procedural default — Don could have raised a federal claim of error on direct appeal — and Don is not prejudiced by the default, because his claim is without merit. Ground Three should therefore be denied.

### 4. Ground Four: Suggestive Pretrial Identification Admitted at Trial

Don argues in Ground Four that the admission of pretrial-identification evidence violated his federal due-process rights and that the disposition of this argument by the Minnesota Court of Appeals was unreasonable. This claim was fairly presented by Don to the Minnesota courts on direct appeal. *See Don*, 2015 WL 648243, at *2-3. Moreover, the claim is cognizable on habeas review, as it sounds at least partly in federal law. By separate order, this Court will require respondent to file an answer to this claim that fully complies with the requirements of Rules 5(b), (c) and (d) of the Rules Governing Section 2254 Cases in the United States District Courts.

### 5. Ground Five: Ineffective Assistance of Counsel

Finally, Don argues that his trial counsel was ineffective in several respects. Never has Don raised this issue in the Minnesota state courts (as Don expressly acknowledges, *see* Pet. at 12), and it is now too late for him to do so. *See Knaffla*, 243 N.W.2d at 741. Thus, Don can

---

[3]At heart, Don's argument is not based in law, but in policy; he contends that a sentencing court *should not* be able to consider his criminal history in the way contemplated by Minnesota law. "[S]uch a challenge should be brought before the legislature because it is outside the purview of this court as an error-correcting court." *Don*, 2015 WL 648243, at *6.

pursue this claim in a federal habeas petition only if he can demonstrate cause and prejudice for the default. *Armstrong*, 418 F.3d at 926. The reasons Don provides for his failure to raise this claim earlier — that not until he studied the trial transcripts did he become aware of the potential ineffective-assistance claim, and that his time in prison placed him under stress that caused him to neglect the claim, *see* Petition at 12 — are underwhelming; Don undoubtedly would have been aware of any defects in his counsel's performance at the time of his direct appeal (or at the time he pursued any of his three previous attempts at post-conviction relief in state court), and the stress of prison has not prevented Don from vigorously prosecuting his claims in several post-conviction proceedings. Because the claim is procedurally defaulted and Don has not demonstrated cause and prejudice for the default, Ground Five should be denied.

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY RECOMMENDED that Grounds One, Three, and Five of petitioner Tony Don's petition for a writ of habeas corpus [ECF No. 1] be DENIED.

Dated: March 8, 2016          *s/ Jeffrey J. Keyes*
                                                       Jeffrey J. Keyes
                                                       United States Magistrate Judge

## **NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:**  This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.